UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2022 MAR -3 PM 4: 18

CLERK

BY _____
DEPUTY CLERK

ROBERT WOLFE                                )
and CROSSFIELD, INC.,                       )
                                            )
        Plaintiffs,                         )
                                            )
                v.                          )        Case No. 2:21-cv-00053
                                            )
ENOCHIAN BIOSCIENCES DENMARK                )
APS, RENÉ SINDLEV, HENRIK                    )
GRØNFELDT-SØRENSEN, MARK DYBUL,              )
LUISA PUCHE, and ENOCHIAN                    )
BIOSCIENCES, INC.,                          )
                                            )
        Defendants.                         )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS AND GRANTING PLAINTIFFS'
MOTION TO AMEND**
(Docs. 12, 19, 25, 36, & 38)

Plaintiffs Robert Wolfe and Crossfield, Inc. ("Crossfield") filed a verified

complaint on March 1, 2021 (the "Complaint"), in which they assert two claims,

malicious prosecution ("Count I") and abuse of process ("Count II"), against Defendants

Enochian BioSciences Denmark ApS ("Enochian Denmark"), Enochian BioSciences,

Inc. ("Enochian BioSciences"), René Sindlev, Henrik Grønfeldt-Sørensen, Mark Dybul,

and Luisa Puche (collectively, "Defendants"). Plaintiffs seek compensatory and punitive

damages as well as attorney's fees and costs and prejudgment interest.

On April 14, 2021, Enochian BioSciences, Ms. Puche, and Mr. Sindlev moved to

dismiss the Complaint. (Doc. 12.) Plaintiffs opposed that motion on May 13, 2021 and

filed a conditional motion to amend their Complaint. (Doc. 19). On May 27, 2021,

Enochian BioSciences, Ms. Puche, and Mr. Sindlev filed a reply in support of their

motion to dismiss and opposed Plaintiffs' motion to amend. On June 8, 2021, Mr.

Grønfeldt-Sørensen filed a motion to dismiss (Doc. 25), which Plaintiffs opposed. The court heard oral argument on all pending motions on July 20, 2021.

On August 30, 2021, Enochian Denmark moved to dismiss the Complaint, incorporating by reference the arguments made by other Defendants. (Doc. 36.) Plaintiffs opposed Enochian Denmark's motion on September 29, 2021. Mr. Dybul filed a motion to dismiss on September 15, 2021, incorporating by reference the arguments made by other Defendants. (Doc. 38.)

Plaintiffs are represented by Daniel D. McCabe, Esq. Defendants are represented by Christopher J. Valente, Esq. and David M. Pocius, Esq.

## I.    Whether Plaintiffs Should Be Granted Leave to Amend.

Plaintiffs request leave to amend "[t]o the extent the Court agrees with Defendants [] that Plaintiffs' original filing was defectively vague[.]" (Doc. 19 at 1.) Their motion initially failed to include their proposed amendments as required by Local Rule 15(a), however, that noncompliance has since been rectified. Defendants addressed Plaintiffs' proposed amendments in their sur-reply. They nonetheless argue the proposed amendments are based on facts known to Plaintiffs at the time of the original complaint and should have been included therein. They further argue that the amendments are futile and request dismissal with prejudice.

"When a party requests leave to amend its complaint, permission generally should be freely granted." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (citing Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.")). However, "[l]eave to amend may properly be denied if the amendment would be futile, as when the proposed new pleading fails to state a claim on which relief can be granted[.]" *Id.* at 185 (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). Because "[t]he adequacy of a proposed amended complaint . . . is to be judged by the same standards as those governing the adequacy of a filed pleading[,]" *id.*, the court "may determine whether the amendments would be futile and at the same time consider whether a claim should be dismissed." *Phillips v. Orleans Cnty.*, 2019 WL 3088051, at *4 (W.D.N.Y. July 15, 2019).

In order to further the "just, speedy, and inexpensive determination" of this action, Fed. R. Civ. P. 1, the court GRANTS Plaintiffs' motion to amend and will consider Defendants' motions to dismiss in light of the Amended Complaint. *See Illiano v. Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 349 (E.D.N.Y. 2008) ("When a plaintiff amends its complaint while a motion to dismiss is pending[,] the court may . . . consider the merits of the motion in light of the amended complaint.") (citation, alterations, and internal quotation marks omitted).

## II.    The Amended Complaint's Factual Allegations.

Mr. Wolfe is a citizen of the state of Vermont and at all relevant times resided in Randolph, Vermont. Crossfield is a Wyoming corporation, and Mr. Wolfe is its Chief Executive Officer ("CEO") and sole shareholder.

Enochian Denmark is a foreign corporation located in Denmark. Enochian BioSciences is a Delaware corporation with its principal place of business in Los Angeles, California; it is the parent company of Enochian Denmark. Mr. Sindlev is Chairman of the Board of Enochian BioSciences and, upon information and belief, resides in Miami Beach, Florida. Mr. Grønfeldt-Sørensen is the CEO of Enochian Denmark and, upon information and belief, is a resident of Denmark. Mr. Dybul is the CEO of Enochian BioSciences and, upon information and belief, is a resident of Chestertown, Maryland. Ms. Puche is the Chief Financial Officer ("CFO") of Enochian BioSciences and, upon information and belief, is a resident of Miami, Florida.

Plaintiffs allege that the parties are involved in ongoing litigation in Denmark (the "Danish Litigation") that stems from an employment contract dispute between Plaintiffs and Enochian Denmark in which Mr. Wolfe is seeking payments in connection with his departure from his position as Enochian Denmark's former CFO.

In February 2019, the parties were negotiating a resolution to the Danish Litigation when Enochian Denmark and Enochian BioSciences filed a Vermont Superior Court action (the "Underlying Action") in Orange County, Vermont, alleging Plaintiffs had disclosed damaging confidential information and that Defendants were at risk for irreparable harm. The Vermont Superior Court granted Defendants' ex parte motion for a

3

temporary restraining order ("TRO") and injunctive relief and prohibited Plaintiffs from disclosing certain information. On November 5, 2019, the Vermont Superior Court held that Defendants failed to make the requisite showing for a preliminary injunction and dissolved the TRO. After further motion practice, the Underlying Action was resolved in November 2020. On November 17, 2020, the Vermont Superior Court conditionally granted Enochian Denmark's and Enochian BioSciences' motion to dismiss the Underlying Action with prejudice and awarded Plaintiffs costs but not attorney's fees. Plaintiffs allege that the dismissal with prejudice was "effectively a complete adjudication in the Plaintiffs' favor." (Doc. 43-1 at 4, ¶ 23.)

Plaintiffs assert that Defendants lacked a factual basis for the Underlying Action, acted in concert to harm them, and caused irreparable harm to Mr. Wolfe's professional reputation and Crossfield's business reputation. Plaintiffs further allege they incurred $230,508.12 in legal fees defending the Underlying Action, the purpose of which was to "gain leverage in the Danish [L]itigation" as well as "leverage Plaintiffs financially, exhaust Plaintiffs['] financial resources, and influence the Danish negotiations." *Id.* at 4, ¶ 25, 28.

In Count I, malicious prosecution, Plaintiffs allege that the Underlying Action lacked probable cause and was brought with malice, as "evidenced by the reasonable expectation that it would damage Plaintiffs' professional reputation, cost Plaintiffs hundreds of thousands of dollars, and that it did not have a reasonable chance of success." *Id.* at 5-6, ¶ 40.

For Count II, abuse of process, Plaintiffs contend that Defendants improperly sought an ex parte TRO against Plaintiffs and did so not "to prevent the disclosure of allegedly confidential information . . . but instead to gain negotiating leverage in the Danish [L]itigation and damage Plaintiffs' career." *Id.* at 7, ¶ 53.

Plaintiffs allege Ms. Puche had direct involvement in the malicious prosecution and abuse of process by verifying the complaint in the Underlying Action and by giving sworn testimony in support of it. Mr. Sindlev was allegedly involved "by negligently or intentionally furthering the interests of [Enochian Denmark and Enochian BioSciences]

4

by filing an affidavit in Vermont [Superior] Court." *Id.* at 6, ¶ 44. Mr. Grønfeldt-Sørensen and Mr. Dybul were allegedly involved because they directed Enochian Denmark and Enochian BioSciences, respectively, to pursue the Underlying Action. All Defendants allegedly "worked in concert, in furtherance of a common goal" and "committed acts that proximately caused harm to the Plaintiffs" knowing the Underlying Action was brought without probable cause in order to harm Plaintiffs and influence the Danish Litigation. *Id.* at 4-5, ¶¶ 26, 32.

On a motion to dismiss, the court may consider not only the Amended Complaint but documents and information incorporated by reference, integral to it, or subject to judicial notice. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006). Defendants seek judicial notice of the following documents filed in the Underlying Action: the verified complaint (Doc. 12-3); the motion for an emergency ex parte TRO and preliminary injunction (Doc. 12-6); the motion to dismiss with prejudice and a supporting reply brief (Docs. 12-10 & 12-11); and six entry orders (Docs. 12-4, 12-5, 12-7, 12-8, 12-9, & 12-12). Plaintiffs do not oppose judicial notice and "w[ere] put on notice by the [D]efendants' proffer of the documents that the district court might consider them." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)) (citing Fed. R. Evid. 201(e)).

"A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc.*, 458 F.3d at 157 (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)). Moreover, because the Amended Complaint "relies heavily upon [the] terms and effect" of the request for a TRO and the Vermont Superior Court's rulings, these documents are integral to the Amended Complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam)). For these reasons, the court GRANTS Defendants' request for judicial notice.

5

III.    **Conclusions of Law and Analysis.**

A.      **Whether There Was Valid Service of Process on Mr. Sindlev.**

Mr. Sindlev asserts that Plaintiffs' service of process on him was insufficient because he does not live at the address where the Complaint was served. Plaintiffs left a copy of the Complaint with Mr. Sindlev's daughter-in-law at 50 South Pointe Drive, TH1, Miami Beach, Florida (the "Miami Beach Property") and assert that the Complaint was validly served because Mr. Sindlev owns multiple homes, including the Miami Beach Property. They argue that requiring them to track down Mr. Sindlev's current residence would allow individuals with multiple homes to avoid service of process.

Fed. R. Civ. P. 12(b)(5) provides for dismissal of a complaint if it has not been properly served. On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient. *See Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005) (observing that plaintiffs "carry the burden of pro[of]" where a defendant "move[s] to dismiss for insufficient service of process under Rule 12(b)(5)"). "In deciding a Rule 12(b)(5) motion, a [c]ourt must look to Rule 4, which governs the content, issuance, and service of a summons." *Felton v. Monroe Cmty. Coll.*, 528 F. Supp. 3d 122, 132 (W.D.N.Y. 2021) (quoting *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010)). Under Fed. R. Civ. P. 4(e)(2)(A) and (B), an individual may be served by "delivering a copy of the summons and of the complaint to the individual personally[ ]" or "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there[.]"

In *Nat'l Dev. Co. v. Triad Holding Corp.*, the Second Circuit observed that the phrase "dwelling house or usual place of abode" are "archaic" and "survive . . . unhappily, in jurisdictional statutes." 930 F.2d 253, 256-57 (2d Cir. 1991). "In a highly mobile and affluent society, it is unrealistic to interpret Rule 4[] so that the person to be served has only one dwelling house or usual place of abode at which process may be left." *Id.* at 257 (internal citations, quotation marks, and alteration omitted). For this reason, the Second Circuit held that service of process was proper when it was left at

a defendant's home despite it not being his "usual place of abode" because there were "sufficient indicia of permanence" at that residence. *Id.*

Applying *Nat'l Dev. Co.*, the Southern District of New York similarly held that service of process on a defendant was valid because there was "sufficient indicia of permanence at that location to make plaintiff's service there reasonably calculated to provide [the defendant] with actual notice of the action" based on evidence that the defendant "stay[ed] at that address when he [wa]s in the New York area," "maintain[ed] a private bedroom, clothes and a phone line at that address[,]" and "receive[d] mail there, including brokerage statements, which his mother forwards to him in California." *Jaffe & Asher v. Van Brunt*, 158 F.R.D. 278, 280 (S.D.N.Y. 1994).

The same result is warranted here. Mr. Sindlev periodically resides at the Miami Beach Property, and Plaintiffs' service was reasonably calculated to provide him with notice of the action and in fact did so. He does not dispute that the Miami Beach Property is identified as his personal address in a Danish business registry and in 2021 Danish tax filings. He also has sufficient control over the Miami Beach Property to permit his son and daughter-in-law to reside there. After the Complaint was received by his daughter-in-law, he timely responded to it. Although Mr. Sindlev avers he has "not lived []at the [Miami Beach] Property since approximately June 2020" when he "left the United States" and has "no plans and do[es] not currently intend to live at the [Miami Beach Property] in the future[,]" (Doc. 12-14 at 1), he does not proffer an alternative residence where he may be served. *See Norris v. Causey*, 869 F.3d 360, 368 (5th Cir. 2017) (upholding service at a home in New Mexico where the defendant's wife lived, although the defendant argued that he had permanently relocated to Denver five years prior). This would leave Plaintiffs to guess where he may be living.

"[B]ecause service was proper under Fed. R. Civ. P. 4(e), so that [Mr. Sindlev] received actual notice, there is no due process violation." *United States v. Mellon*, 719 F. App'x 74, 77 (2d Cir. 2018) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). Mr. Sindlev's motion to dismiss under Fed. R. Civ. P. 12(b)(5) is therefore DENIED.

7

**B.     Whether the Claims Against Mr. Sindlev, Mr. Grønfeldt-Sørensen, Mr. Dybul, and Ms. Puche Should Be Dismissed for Lack of Personal Jurisdiction.**

Enochian Denmark and Enochian BioSciences do not dispute the court's personal jurisdiction over them. Mr. Sindlev, Mr. Grønfeldt-Sørensen, Mr. Dybul, and Ms. Puche, however, challenge it because "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him [or her.]" *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984) (internal citations omitted). The court agrees that jurisdiction over each Defendant "must be assessed individually." *Id.*

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "Until an evidentiary hearing is held . . . the plaintiff need make only a prima facie showing that jurisdiction exists[.]" *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985). "In evaluating whether the requisite showing has been made, [the court] construe[s] the pleadings and any supporting materials in the light most favorable to the plaintiff[]." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013).

"The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (citation omitted). "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted).

"In the absence of a federal statute specifically directing otherwise, and subject to limitations imposed by the United States Constitution, [the court] look[s] to the law of the forum state to determine whether a federal district court has personal jurisdiction[.]" *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) (citing Fed. R. Civ.

P. 4(k)(1)(A)). In Vermont, a court may exercise personal jurisdiction over a non-resident defendant "to the full extent permitted by the . . . Due Process Clause" of the Fourteenth Amendment. *State v. Atl. Richfield Co.*, 2016 VT 22, ¶ 10, 201 Vt. 342, 349, 142 A.3d 215, 220 (internal quotation marks omitted); *see also In re Roman Cath. Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 38 (2d Cir. 2014) ("Vermont's long-arm statute[] . . . reflects a clear policy to assert jurisdiction over individual defendants to the full extent permitted by the Due Process Clause.") (internal quotation marks omitted). As a result, "the first part of [the] inquiry—the interpretation of the Vermont law governing service of process—merges with the second part of the jurisdictional test: whether the court's exercise of personal jurisdiction over the defendant satisfies the requirements of due process." *Metro. Life Ins. Co.*, 84 F.3d at 567. This "analysis consist[s] of two components: the 'minimum contacts' test and the 'reasonableness' inquiry." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002); *see also N. Aircraft, Inc. v. Reed*, 572 A.2d 1382, 1386 (Vt. 1990) (providing that "once the court determines that a nonresident defendant has purposefully established minimum contacts within the forum State, several factors must be considered to ensure that exercising personal jurisdiction over the defendant is reasonable") (citation and internal quotation marks omitted).

"A court deciding whether it has jurisdiction over an out-of-state defendant under the Due Process Clause must evaluate the 'quality and nature[]' . . . of the defendant's contacts with the forum state under a totality of the circumstances test[.]" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

### 1. Whether the Individual Defendants Have Sufficient Minimum Contacts with Vermont.

"To determine whether a defendant has the necessary 'minimum contacts,' a distinction is made between 'specific' and 'general' personal jurisdiction." *In re Terrorist Attacks*, 714 F.3d at 673. General jurisdiction "is based on the defendant's general business contacts with the forum and permits a court to exercise its power in a case where

the subject matter of the suit is unrelated to those contacts." *Id.* at 674 (alteration and internal quotation marks omitted). It exists where a defendant's contacts with the forum state "are so 'continuous and systematic' as to render them essentially at home [there].'" *In re Roman Cath. Diocese of Albany*, 745 F.3d at 38 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "In . . . the 'paradigm' case, an individual is subject to general jurisdiction in [his or] her place of domicile." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citation omitted). "Only in the exceptional case will another jurisdiction be entitled to exercise such sweeping powers as the use of its adjudicatory authority to decide matters unrelated to its citizens or to affairs within its borders." *Brown*, 814 F.3d at 627 (internal quotation marks and citation omitted). Because Mr. Sindlev, Mr. Grønfeldt-Sørensen, Mr. Dybul, and Ms. Puche are not domiciled in Vermont and because this case presents no exceptional circumstances, there is no general jurisdiction over them.

Specific jurisdiction "exists when a forum exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum[.]" *In re Terrorist Attacks*, 714 F.3d at 673-74 (alteration and internal quotation marks omitted). There must be "'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Goodyear*, 564 U.S. at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (alteration in original)). "For the purpose of establishing specific personal jurisdiction, the necessary fair warning requirement is satisfied if the defendant has purposefully directed his [or her] activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *In re Terrorist Attacks*, 714 F.3d at 674 (internal quotation marks omitted).

Mr. Sindlev, Mr. Grønfeldt-Sørensen, Mr. Dybul, and Ms. Puche contend that the court lacks specific jurisdiction over them because they were not parties in the Underlying Action and because their alleged contacts with Vermont do not give rise to Plaintiffs' claims. Plaintiffs counter that each individual Defendant's involvement in the

Underlying Action provides a factual and legal basis for personal jurisdiction because Plaintiffs' claims arise directly from that involvement.

Plaintiffs allege that all Defendants are joint tortfeasors because they "worked in concert, in furtherance of a common goal" in the Underlying Action and "committed acts that proximately caused harm to the Plaintiffs." (Doc. 43-1 at 4-5, ¶¶ 26, 32.) All Defendants allegedly "knew or should have known" that the Underlying Action was brought without probable cause, to gain leverage in the Danish Litigation, and to cause financial and reputational harm to Plaintiffs. *Id.* at ¶¶ 27-31. These conclusory allegations do not suffice to establish specific jurisdiction. *See Goldberg v. Dufour*, 2020 WL 620899, at *8–9 (D. Vt. Feb. 10, 2020) (citing *Schwartz v. Frankenhoff*, 733 A.2d 74, 80 (Vt. 1999) (observing that "[n]o court will accept conclusory allegations of a conspiracy, without more, as sufficient to establish personal jurisdiction over an alleged member of the conspiracy") (internal quotation marks omitted) (alteration in original); *see also Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975) (rejecting "bland assertion of conspiracy or agency" as sufficient to sustain personal jurisdiction).

Plaintiffs further allege that Mr. Grønfeldt-Sørensen and Mr. Dybul had "direct involvement" by "negligently or intentionally" directing Enochian Denmark and Enochian BioSciences, respectively, to pursue the Underlying Action. (Doc. 43-1 at 6-8 ¶¶ 45, 47, 57, 58.) Neither Mr. Grønfeldt-Sørensen nor Mr. Dybul were parties in the Underlying Action, and neither is alleged to have proffered a sworn statement or testimony in support of the allegedly improper request for an ex parte TRO. Neither is alleged to have appeared in a Vermont court or undertaken activities in the state. *Cf. Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 158-59 (E.D.N.Y. 2014) (finding the exercise of personal jurisdiction proper where defendants "projected themselves into New York by conducting [an] investigation regarding potential legal issues arising out of New York, contacting individuals in New York, and travelling to New York to deliver [their] findings.").

> [M]erely being an officer or agent of a corporation does not render one personally liable for a tortious act of the corporation. Specific direction or

> sanction of, or active participation or cooperation in, a positively wrongful
> act of commission or omission which operates to the injury or prejudice of
> the complaining party is necessary to generate individual liability in
> damages of an officer or agent of a corporation for the tort of the
> corporation.

*Prive v. Vermont Asbestos Grp.*, 2010 VT 2, ¶ 17, 187 Vt. 280, 289, 992 A.2d 1035,

1041) (internal quotation marks and emphasis omitted)  (quoting *Lobato v. Pay Less

Drug Stores, Inc.*, 261 F.2d 406, 408-09 (10th Cir. 1958)); *see also Wolter v. Safeway

Stores*, 60 F. Supp. 12, 15 (D.D.C 1945), *aff'd*, 153 F.2d 641 (D.C. Cir. 1946) ("Mere

passive knowledge, or acquiescence or consent in the acts of another person, is not

sufficient to impose liability for malicious prosecution.").

Although discovery may yield information regarding an active role played by Mr.

Grønfeldt-Sørensen and Mr. Dybul in the allegedly tortious acts of Enochian Denmark

and Enochian BioSciences, at this juncture, the Amended Complaint contains only

conclusory, speculative allegations to support such a claim.[1] Plaintiffs have thus failed to

make a prima facie showing of minimum contacts that would support the exercise of

specific personal jurisdiction over Mr. Grønfeldt-Sørensen and Mr. Dybul.

In contrast, Plaintiffs allege that Mr. Sindlev "had direct involvement . . . by filing

an affidavit in Vermont [Superior] Court[,]" and Ms. Puche "had direct involvement"

through "sworn testimony" by verifying the complaint in the Underlying Action. (Doc.

43-1 at 6-7, ¶ 42, 44, 56.) Mr. Sindlev and Ms. Puche argue their acts evidenced only

"limited involvement" in the Underlying Action, (Doc. 12-1 at 15). However, at the

pleading stage, a single act "may support the exercise of personal jurisdiction over the

nonresident defendant who has no other contacts with the forum" when the act in

question is allegedly a tort. *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir.

2008); *see also Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir. 2001) (finding that a single

---

[1] In their opposition, Plaintiffs cite facts not set forth in their Amended Complaint and
unsupported by an affidavit. Plaintiffs may not amend their pleadings through their brief. *See
Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (holding a "party may not
amend [a] pleading through statements in briefs") (citation omitted).

phone call with the forum state constituted sufficient minimum contacts because the
defendants allegedly "intentionally defrauded" the plaintiff in that communication).

"Vermont follows the Restatement (Second) of Torts for malicious prosecution
actions." *Bentley v. Northshore Dev., Inc.*, 935 F. Supp. 500, 504 (D. Vt. 1996) (citing
*Chittenden Tr. Co. v. Marshall*, 507 A.2d 965 (Vt. 1986); *Anello v. Vinci*, 458 A.2d 1117
(Vt. 1983)). A person who "takes an active part in the initiation" of civil proceedings;
that is, "sets the machinery of the law in motion," commits a tortious act "whether he acts
in his own name or in that of a third person, or whether the proceedings are brought to
enforce a claim of his own or that of a third person[.]" Restatement (Second) of Torts
§ 674, § 674 cmt. a. By verifying the complaint in the Underlying Action, Ms. Puche
took an active part in its initiation and thereby allegedly committed a tortious act in
Vermont. Likewise, Mr. Sindlev, by submitting an affidavit, allegedly committed a
tortious act in Vermont because a person who "takes an active part in [the] continuation
[of an action] for an improper purpose after he [or she] has learned that there is no
probable cause for the proceeding" also commits a tort. *Id.* at cmt. c. Plaintiffs' claims in
this case arise directly out of these activities in Vermont.

Mr. Sindlev and Ms. Puche argue that their alleged tortious acts are absolutely
privileged because they are testimonial in nature and thus cannot support personal
jurisdiction. Under Vermont common law, witnesses are generally immune from civil
liability for their testimony and a plaintiff may not "predicate a claim on witness
testimony." *Politi v. Tyler*, 751 A.2d 788, 792 (Vt. 2000) ("The defense of absolute
privilege [of witness immunity] generally applies to statements made in the course of
judicial proceedings and acts as a bar to any civil liability.") (alteration in original)
(quoting *Deatherage v. Examining Bd. of Psych.*, 948 P.2d 828, 830 (Wash. 1997)).
However, as the Second Circuit has explained, "[t]he common law made a subtle but
crucial distinction between two categories of witnesses":

> Those whose role was limited to providing testimony enjoyed immunity;
> those who played a role in initiating a prosecution—complaining
> witnesses—did not enjoy immunity. The distinction reflected the difference
> between the two causes of action by which those falsely accused sought to

13

> hold witnesses liable. In an action for defamation, the perjurious witness
> was sought to be held liable only for the defamatory effect of his testimony,
> and in such an action he enjoyed absolute immunity upon a threshold
> showing that the allegedly defamatory statements were relevant to the
> judicial proceeding . . . . However, in an action for malicious prosecution,
> the complaining witness was sought to be held liable for his role in
> initiating a baseless prosecution, and complaining witnesses were not
> absolutely immune at common law.

*White v. Frank*, 855 F.2d 956, 958–59 (2d Cir. 1988) (alterations adopted) (internal

quotation marks and citations omitted) (citing, *inter alia*, *Torrey v. Field*, 10 Vt. 353, 415

(1838)). Vermont common law recognizes this same distinction. *See Torrey*, 10 Vt. at

415; *see also Cegalis v. Trauma Inst. & Child Trauma Inst.*, 2020 WL 2079514, at *3 (D.

Vt. Apr. 30, 2020) ("[T]here are limited exceptions to the testimonial privilege (namely,

where the case involves a malicious prosecution claim or a criminal conviction of

perjury)[.]").

  Because Plaintiffs seek to hold Mr. Sindlev and Ms. Puche liable for initiating and

continuing a malicious prosecution, absolute immunity does not apply. At the pleading

stage, Plaintiffs have proffered sufficient evidence that Mr. Sindlev and Ms. Puche had

minimum contacts with Vermont to withstand a motion to dismiss.

## 2. Whether Exercising Personal Jurisdiction Would Be Reasonable.

  Upon finding minimum contacts, the court must determine whether the exercise of

personal jurisdiction comports with "traditional notions of fair play and substantial

justice." *Int'l Shoe Co. v. State of Washington, Off. of Unemp. Comp. & Placement*, 326

U.S. 310, 316 (1945) (internal quotation marks omitted). In making this determination,

the court evaluates:

> [1] the burden on the defendant, [2] the forum State's interest in
> adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient
> and effective relief, [4] the interstate judicial system's interest in obtaining
> the most efficient resolution of controversies, and [5] the shared interest of
> the several States in furthering fundamental substantive social policies.

*Burger King*, 471 U.S. at 477 (internal quotation marks omitted). "The import of the

'reasonableness' inquiry varies inversely with the strength of the 'minimum contacts'

showing—a strong (or weak) showing by the plaintiff on 'minimum contacts' reduces (or increases) the weight given to 'reasonableness.'" *Bank Brussels Lambert*, 305 F.3d at 129. In this case, Plaintiffs allege Mr. Sindlev's and Ms. Puche's direct involvement in the alleged torts. Accordingly, the burden of showing reasonableness is reduced.

Mr. Sindlev's and Ms. Puche's involvement in the Underlying Action supports a conclusion that their participation in this litigation will not be unduly inconvenient and the court will be able to provide effective relief. Although Mr. Sindlev and Ms. Puche are nonresidents, the burden imposed by litigating in Vermont is mitigated by "the conveniences of modern communication and transportation[.]" *Licci*, 732 F.3d at 174 (quoting *Metro. Life Ins. Co.*, 84 F.3d at 574). While "this factor cuts slightly in favor of the D]efendant[s] in the instant case, . . . taken alone, it falls short of overcoming the [P]laintiff[s'] threshold showing of minimum contacts." *Metro. Life Ins. Co.*, 84 F.3d at 574.

Vermont has a significant interest in adjudicating this case because it involves an alleged misuse of Vermont state court procedures. *See id.* (considering where "[t]he acts and omissions that serve as the basis for [the] suit occurred"). In addition, Mr. Wolfe is domiciled in Vermont and claims he suffered reputational harm here. "[I]t is beyond dispute that [Vermont] has a significant interest in redressing injuries that actually occur within the [s]tate." *Keeton*, 465 U.S. at 776; *see also KBA N. Am. Inc. v. Amerigraph, LLC*, 2007 WL 4119119, at *3 (D. Vt. Nov. 16, 2007) (noting that "Vermont has a clear interest in protecting the business interests of its residents"). Moreover, Plaintiffs chose to file suit here, which is "the best indicator of [their] own convenience[.]" *Cabot Hosiery Mills, Inc. v. 7mesh Indus. Inc.*, 2016 WL 9526678, at *5 (D. Vt. June 8, 2016) (citation and internal quotation marks omitted).

In evaluating the interstate judicial system's interest in obtaining the most efficient resolution of the controversy, courts "generally consider where witnesses and evidence are likely to be located." *Metro. Life Ins.*, 84 F.3d at 574. While evidence and witnesses controlled by Defendants are not likely to be found in Vermont, the Underlying Action took place in the forum state and Plaintiffs' evidence and witnesses are likely to be

located here. This factor supports the reasonableness of an exercise of jurisdiction in Vermont.

The court must also "consider the common interests of the several states in promoting substantive social policies." *Id.* at 575. The parties have not identified "any substantive social policies that would be furthered by permitting this case to be heard in Vermont" as opposed to elsewhere. *Id.*

On balance, Plaintiffs have demonstrated that subjecting Mr. Sindlev and Ms. Puche to litigation in Vermont would be reasonable. In contrast, Mr. Sindlev's and Ms. Puche's "generalized complaints of inconvenience arising from having to defend [itself] from suit in [Vermont] do not add up to a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 173 (2d Cir. 2010) (internal quotation marks omitted). Because exercising jurisdiction over Mr. Sindlev and Ms. Puche is consistent with "traditional notions of fair play and substantial justice[,]" *Int'l Shoe*, 326 U.S. at 316 (internal quotation marks omitted), and satisfies the Due Process Clause, their motion to dismiss for lack of personal jurisdiction is DENIED.

Conversely, in light of Plaintiffs' failure to make "a prima facie showing" that Mr. Grønfeldt-Sørensen and Mr. Dybul have sufficient minimum contacts with Vermont to support an exercise of specific jurisdiction, their motions to dismiss for lack of personal jurisdiction are GRANTED. *Hoffritz for Cutlery*, 763 F.2d at 57.

## C.   Whether the Amended Complaint Should Be Dismissed for Failure to State a Claim.

Because Vermont recognizes that "[f]ree and uninhibited access to the courts is an important right of all citizens[,]" the torts of abuse of process and malicious prosecution "are carefully limited so as not to produce an unwarranted chilling effect on the exercise of th[at] right." *Jacobsen v. Garzo*, 542 A.2d 265, 267 (Vt. 1988). Defendants argue that Plaintiffs' claims do not fit these "carefully limited" requirements, *id.*, and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

"[A] plaintiff alleging the tort of abuse of process must plead and prove: 1) an illegal, improper or unauthorized use of a court process; 2) an ulterior motive or an ulterior purpose; and 3) resulting damage to the plaintiff." *Jacobsen*, 542 A.2d at 268. However, "[e]ven if used to satisfy malicious intentions, 'the *proper* use of . . . legal process . . . is not actionable.'" *Weinstein v. Leonard*, 2015 VT 136, ¶ 22, 200 Vt. 615, 625, 134 A.3d 547, 555 (second and third alterations and emphasis in original) (quoting *Jacobsen*, 542 A.2d at 267); *see also Long v. Parry*, 2016 WL 814861, at *24 (D. Vt. Feb. 29, 2016), *aff'd*, 679 F. App'x 60 (2d Cir. 2017) ("Each element of an abuse of process claim is separate and distinct, and thus, "the *proper* use of . . . legal process (even though used for a bad intention and to satisfy malicious intentions) is not actionable.") (alteration and emphasis in original) (quoting *Jacobsen*, 542 A.2d at 267-68). "[T]he tort requires that the 'processes of the court have themselves been used improperly.'" *Weinstein*, 2015 VT 136, ¶ 22, 200 Vt. at 625, 134 A.3d at 555 (collecting cases) (quoting *Nashef v. AADCO Med., Inc.*, 947 F. Supp. 2d 413, 421 (D. Vt. 2013)). "[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Jacobsen*, 542 A.2d at 267 (citation omitted).

Plaintiffs allege that the TRO was "improperly sought" because it "lacked an objective, factual basis" and "was not brought primarily to prevent the disclosure of allegedly confidential information . . . but instead to gain negotiating leverage in the Danish [L]itigation and damage Plaintiffs' career." (Doc. 43-1 at 7, ¶¶ 50, 52, 53.) They further argue that, by filing ex parte, Defendants "prevented Plaintiffs from exercising

17

their First Amendment and Article 13 rights of free speech" and engaged in "'some form of extortion.'" (Doc. 17 at 5) (quoting Restatement (Second) of Torts § 682, cmt. b). However, Vermont law allows a TRO to be issued "without written or oral notice to the adverse party or that party's attorney" when, as in the Underlying Action, an application is supported by an affidavit or verified complaint. *See* Vt. R. Civ. P. 65(a). There was no procedural violation in Defendants' manner of filing.

There was also no violation of the freedom of speech in restraining Mr. Wolfe from disclosing allegedly confidential business information obtained in the course of his employment. "Employees, whether current or former, have a duty not to use or disclose confidential information imparted to them by their employer. The former employee's duty of confidence attaches to any information the employee knows or has reason to know is confidential." *Omega Optical, Inc. v. Chroma Tech. Corp.*, 800 A.2d 1064, 1066 (Vt. 2002) (citations omitted); *accord ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 994 (2d Cir. 1983). While, "in light of First Amendment considerations," courts generally do not have the "power to prohibit dissemination of . . . information [which] has been gathered independently of judicial processes[,]" *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 946 (2d Cir. 1983), "in appropriate circumstances, the owner of trade secrets may obtain an injunction against their use or disclosure by another in breach of his confidential relationship with the owner." *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991) (citing *Bridge C.A.T. Scan Assocs.*, 710 F.2d at 946).

"The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it[,]" Restatement (Second) of Torts § 682, such as when a party "improperly use[s] subpoenas, ask[s] for an excessive attachment, or use[s] pleadings to coerce the surrendering of unrelated property[.]" *Weinstein*, 2015 VT 136, ¶ 25, 200 Vt. at 627, 134 A.3d at 555. Plaintiffs argue that Defendants' attempt to "gain leverage" in the Danish Litigation was extortion, (Doc. 43-1 at 4, ¶ 28), but seeking "to gain tactical advantage in . . . another litigation" is not an abuse of process. *HC2, Inc. v.*

*Delaney*, 510 F. Supp. 3d 86, 107 (S.D.N.Y. 2020) (applying New York law). "Skillful lawyers not infrequently take advantage of whatever forums are available to them to prevail either in the prosecution of a lawsuit or in the defense of another lawsuit. Such conduct is part of the litigation process; it is not tortious." *Id.*

Some courts have allowed abuse of process claims "where an individual harasses a litigation opponent by clearly wrongful conduct." *See Cegalis*, 2020 WL 2079514, at \*2. Applying Vermont law, this court found that allegations of "failure to produce documents subject to subpoena" were "delaying tactics" that could "viably qualify as an improper use of a court process" sufficient to survive a motion to dismiss. *Id.* at 3. It further found that "threats made by [d]efendants against [p]laintiff's expert witness" were "irregular action" that could also qualify as an improper use of court process. *Id. Cegalis* is factually distinguishable from the instant case, which does not involve a failure to comply with a subpoena or an unauthorized or irregular use of a court process.

Moreover, in *Cegalis*, this court relied on a case in which the Third Circuit, applying Pennsylvania law, found that "abusive discovery tactics and improper motion practice in order to gain a litigation advantage" were sufficient to state a claim for abuse of process. *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003) (emphasis omitted). The Third Circuit noted that Pennsylvania's Supreme Court followed the "modern trend" and "interpreted the tort broadly[.]" *Id.* at 305. Under this broad interpretation, the focus is on "whether a legal process has been used as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *Id.* at 307 (internal quotation marks and citations omitted).

In contrast, Vermont courts have "carefully limited" the tort of abuse of process and have repeatedly held that the "illegal, improper[,] or unauthorized use of a court process" is a "separate and distinct" element from "an ulterior motive or an ulterior purpose[,]" so that there is "no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Jacobsen*, 542 A.2d at 267-68 (internal quotation marks omitted); *see also Weinstein*, 2015 VT 136, ¶ 27, 200 Vt. at 627, 134 A.3d at 556 ("[A]buse of process . . . requires

proof of improper use of specific court processes, rather than a use of the legal system for improper purposes.").

While Defendants' allegedly false representations regarding the confidentiality of the information they sought to protect was necessary to the Vermont Superior Court's finding of irreparable harm and approval of the TRO, *see* Doc. 12-4 at 4 ("[D]isclosure of confidential information is recognized to cause irreparable harm for injunctive relief purposes[.]"); Vt. R. Civ. P. 65(a) (requiring showing of "immediate and irreparable injury, loss, or damage" to qualify for TRO), "the initiation of vexatious civil proceedings known to be groundless is not abuse of process." *Weinstein*, 2015 VT 136, ¶ 22, 200 Vt. at 625, 134 A.3d at 555( internal quotation marks omitted) (quoting *Bus. Publ'ns, Inc. v. Stephen*, 666 A.2d 932, 933 (N.H. 1995)); *see also Advantor Cap. Corp. v. Yeary*, 136 F.3d 1259, 1264 (10th Cir. 1998) ("Malicious prosecution is concerned with maliciously causing process to issue, while abuse of process is concerned with the improper use of process after it has been issued.") (internal quotation marks and citations omitted). The "appropriate consequence" for making misrepresentations to a court or advancing arguments for an improper purpose is generally "a motion for relief under Vermont Rule of Civil Procedure 11, not a claim for abuse of process." *Weinstein*, 2015 VT 136, ¶ 22, 200 Vt. at 625, 134 A.3d at 555. "The defense to purportedly frivolous litigation is generally to prevail in that litigation, not to seek a state-law tort remedy." *Delaney*, 510 F. Supp. 3d at 107 (internal quotation marks and citation omitted) (holding plaintiff failed to state a claim for abuse of process by alleging defendant "made outrageous allegations seeking a temporary restraining order . . . and made false allegations in its pleadings").

Accepting Plaintiffs' factual allegations as true, Defendants did "nothing more than carry out the [TRO] process to its authorized conclusion[.]" *Jacobsen*, 542 A.2d at 267. Plaintiffs have thus failed to plead the essential elements of an abuse of process claim. *See Nashef*, 947 F. Supp. 2d at 421-22 ("Because Defendants have alleged only that the filing of the present lawsuit was frivolous and brought for an improper purpose, not that any processes of the court have themselves been used improperly, Defendants' abuse of civil process counterclaim fails to state a claim upon which relief may be

granted.").

For similar reasons, Defendants move to dismiss Plaintiffs' malicious prosecution claim. "To recover for malicious prosecution, [a] plaintiff must prove that [the] defendant initiated or continued the case [1] without probable cause, [2] that [the] defendant acted with malice, and [3] that the earlier case terminated in plaintiff's favor[.]" *Bacon v. Reimer & Braunstein, LLP*, 2007 VT 57, ¶ 4, 182 Vt. 553, 554, 929 A.2d 723, 725 (citing *Anello*, 458 A.2d at 1119).

Defendants assert that Plaintiffs cannot demonstrate that the Underlying Action was brought without probable cause, which requires a party to establish that "there was no objectively reasonable basis to bring the action." *Id.* at ¶ 6, 182 Vt. at 555, 929 A.2d at 726 (citing, *inter alia*, W. Keeton, Prosser & Keeton on the Law of Torts § 120, at 893-94 (5th ed. 1984) (noting probable cause standard in civil actions merely requires that facts and law would support a "reasonable chance" of prevailing on the claim) (internal quotation marks omitted)). Plaintiffs allege that the Underlying Action "lacked a factual basis" and "lacked probable cause" because the "allegedly confidential information was already publicly available[.]" (Doc. 43-1 at 5, ¶¶ 34-36.)[2]

In making their probable cause arguments, the parties disagree regarding the import of the Vermont Superior Court's orders in the Underlying Action. Defendants argue that the TRO issued by the Vermont Superior Court establishes the Underlying Action was brought with probable cause. In general, "a decision by a competent tribunal in favor of the person initiating civil proceedings is conclusive evidence of probable cause. This is true although it is reversed upon appeal and finally terminated in favor of the person against whom the proceedings were brought." Restatement (Second) of Torts § 675, cmt. b. However, a favorable decision is not conclusive evidence of probable cause if Plaintiffs can establish the decision was based on "misleading, fabricated, or

---

[2] Defendants argue that a lack of factual foundation for a claim does not equate to a lack of probable cause. The Amended Complaint alleges not only that the Underlying Action lacked a factual foundation but that it also lacked probable cause because the information sought to be protected was not confidential.

otherwise improper evidence." *Lay v. Pettengill*, 2011 VT 127, ¶ 22, 191 Vt. 141, 153, 38 A.3d 1139, 1147 (collecting cases);[3] *see also* Restatement (Second) of Torts § 675, cmt. i (noting favorable decision does not "conclusively establish[] the existence of probable cause" if "obtained by fraud, perjury or other corrupt means"). Because the TRO in the Underlying Action was allegedly obtained based on a material misrepresentation that "already publicly available" information was "confidential[,]" (Doc. 43-1 at 5, ¶ 36), the issuance of the TRO does not, alone, establish that the Underlying Action was brought with probable cause.

Conversely, Plaintiffs argue that the dismissal with prejudice of the Underlying Action demonstrates it was brought without probable cause as a matter of law. This argument also lacks merit. "[A] termination of civil proceedings by a competent tribunal adverse to the person initiating them is not evidence that they were brought without probable cause." Restatement (Second) of Torts § 675, cmt. b. The Vermont Superior Court specifically refrained from deciding the issue of probable cause:

> [T]o the extent the [Plaintiffs] might later pursue a malicious prosecution action, the dismissal with prejudice order adjudicates the merits in [Plaintiffs'] favor, which may well be relevant to and/[]or possibly establish the 'without probable cause' and/[]or termination of the proceedings in claimant's favor elements of such a subsequent action (on which the court expresses no opinion).

(Doc. 12-12 at 6.)

Defendants fare no better with their contention that Plaintiffs fail to plausibly allege malice. "The malice element of a malicious prosecution claim requires a showing that the 'baseless suit was instituted from any improper and wrongful motive.'" *Chittenden Tr. Co.*, 507 A.2d at 970 (quoting *Brault v. Town of Milton*, 527 F.2d 730, 739 (2d Cir. 1975)). Defendants argue "the fact that the [Underlying A]ction purportedly damaged Plaintiffs' professional reputation and caused them to incur legal fees is not

---

[3] *Lay* involved an underlying criminal action, but the standards for establishing probable cause for malicious criminal prosecutions are "applicable here so far as they are pertinent." Restatement (Second) of Torts § 675, cmt. i; *see also id.* cmt. b (relying on standards for malicious criminal prosecutions).

evidence of malice" and instead "relate to, at most, Plaintiffs' damages[.]" (Doc. 28-1 at 5.) However, Plaintiffs do not merely allege that the Underlying Action resulted in reputational and economic harm; they claim it "was brought" to cause such harm as well as "to gain leverage" in the Danish Litigation. (Doc. 43-1 at 4-5, ¶¶ 28, 40.) If proven, both are "improper and wrongful motive[s]." *Chittenden Tr. Co.*, 507 A.2d at 970 (quoting *Brault*, 527 F.2d at 739) (internal quotation marks omitted). In addition, "[t]he element of malice may be inferred from proof of a lack of probable cause." *Id.* (citing *N. Oil Co. v. Socony Mobil Oil Co.*, 347 F.2d 81, 84 (2d Cir. 1965); *Ryan v. Orient Ins. Co.*, 119 A. 423, 425 (Vt. 1923)). Because Plaintiffs have adequately alleged both malice and a lack of probable cause, they have plausibly stated a claim for malicious prosecution.

## D.   Whether the Amended Complaint Relies Upon Impermissible Group Pleading.

As a final ground for dismissal, Defendants assert that Plaintiffs impermissibly group all Defendants and, as a result, Defendants lack fair notice of the claims against them.

> Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995).

*Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order).

In their Amended Complaint, Plaintiffs allege the specific acts of each Defendant giving rise to their claims: in the Underlying Action Enochian Denmark and Enochian BioSciences were named parties; Mr. Sindlev filed an affidavit; and Ms. Puche verified the complaint. The Amended Complaint is thus not a "shotgun pleading" that "lump[s] separate [Defendants] together in a conclusory fashion [or] treat[s] separate [Defendants] as a single entity without explanation[.]" *Embree v. Wyndham Worldwide Corp.*, 779 F. App'x. 658, 661 (11th Cir. 2019). Plaintiffs' allegations give each Defendant "fair notice" of Plaintiffs' claims and "the ground upon which [they] rest[]." *Ferro*, 296 F.2d at 851 (internal quotation marks omitted).

Because the Amended Complaint plausibly states a claim for malicious prosecution but not abuse of process, Defendants' motions to dismiss (Docs. 12, 25, 36, & 38) are GRANTED IN PART as to Count II and DENIED IN PART as to Count I. Defendants request dismissal with prejudice because amendment would be futile. Because Plaintiffs' motion for leave to amend (Doc. 19) was granted and because there are no proposed amendments to analyze for futility, the court DENIES Defendants' request.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to amend (Doc. 19) is GRANTED and Defendants' motions to dismiss (Docs. 12, 25, 36, & 38) are GRANTED IN PART and DENIED IN PART. Plaintiffs' claims against Mr. Grønfeldt-Sørensen and Mr. Dybul are DISMISSED for lack of personal jurisdiction. Count II is DISMISSED WITHOUT PREJUDICE for failure to state a claim upon which relief can be granted.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this _3rd_ day of March, 2022.

Christina Reiss, District Judge
United States District Court