# EXHIBIT 3

CONFIDENTIAL

The Deposition of

# RENE SINDLEV

In the Matter of

# ROBERT WOLFE, ET AL

vs

# ENOCHIAN BIOSCIENCES, INC., ET AL

Taken On

# JULY 08, 2022



CONFIDENTIAL

CONFIDENTIAL

1

```
 1            UNITED STATES DISTRICT COURT
                  DISTRICT OF VERMONT
 2
   ROBERT WOLFE, and
 3 CROSSFIELD, INC.

 4      Plaintiff,              Case No.:  2:21-cv-53

 5       v.

 6 ENOCHIAN BIOSCIENCES
   DENMARK ApS, and
 7 ENOCIAN BIOSIENCES, INC.

 8
        Defendants.
 9

10 * * * * * * * * * * * * * * * * * * * * * * * * *

11

12           The deposition of RENE SINDLEV, appearing

13      remotely via Videoconference from France, taken

14      in connection with the captioned cause,

15      pursuant to the following stipulations before

16      Candy M. Leger, Certified Court Reporter,

17      appearing remotely from Church Point,

18      Louisiana, on the 8th day of July, 2022 at 7:00

19      a.m. CST/8:00 a.m. EST.

20

21

22

23

24

25
```

CONFIDENTIAL

```
 1        and I saw the deposition from Luisa and the
 2        deposition from Robert Wolfe.  Yes.  That was
 3        more or less it.
 4   Q    Did you review any correspondence?  Any emails
 5        from earlier years or anything like that?
 6   A    No.
 7   Q    Did anybody apart from your lawyers help you
 8        prepare?
 9   A    No.
10   Q    Briefly, what is your current role at Enochian
11        Biosciences?
12   A    I'm the Chairman of the Board.
13   Q    How long have you been the Chairman of the
14        Board?
15   A    Since the start -- since the merger in February
16        2016 -- 18.  Sorry.
17   Q    And from your Interrogatory answers, you or your
18        companies own approximately twenty percent of
19        Enochian Biosciences?
20   A    Yes.
21   Q    Do you have an interest in other companies that
22        own a portion of Enochian Biosciences?
23             MR. VALENTE:
24                  Objection.  Form.
25   A    I didn't understand that question.
```

```
 1              MR. VALENTE:
 2                   Objection.  Form.
 3    A    I knew of it when I wrote that Affidavit, so
 4         there was no reason to read it again.
 5    Q    But you had read that report prior to signing
 6         this Affidavit?
 7    A    Yes.
 8              MR. VALENTE:
 9                   Objection.  Form.
10    Q    And a copy of that report was submitted with
11         this Affidavit?
12              MR. VALENTE:
13                   Objection.  Form.
14    A    I didn't send it, so I don't know.  But I would
15         assume, yes.  Yes -- I remember.  Yes, it was.
16    Q    I'm going to stop the share and do another
17         exhibit.  Mr. Sindlev, can you see my screen
18         now?
19    A    Yes.
20    Q    I've uploaded Exhibit #3 to the exhibit share.
21         Looking at this document, it says Confidential
22         May 14, 2018 Risk Assessment Number 2.  I'll
23         present to you that this was attached with the
24         filings with your Affidavit.  Is this the report
25         that you haven't read?
```

CONFIDENTIAL
26



Designated CONFIDENTIAL per Protective Order (Dkt. No. 70)

CONFIDENTIAL
27

Designated CONFIDENTIAL per Protective Order (Dkt. No. 70)

CONFIDENTIAL



**CONFIDENTIAL**
**32**

1  Designated CONFIDENTIAL per Protective Order (Dkt. No. 70)



CONFIDENTIAL
33



1       Designated CONFIDENTIAL per Protective Order (Dkt. No. 70)

**CONFIDENTIAL**

```
 1  A    Yes, I guess.
 2  Q    Do you recall the approximate date of Bob's
 3       termination?
 4  A    As far as I remember, it was -- I called Bob in
 5       sometime at the end of January, 2019.  Maybe
 6       before -- maybe even December.  I don't know.  I
 7       don't remember.
 8  Q    Were you the one who called Robert Wolfe to let
 9       him know he had been terminated?
10  A    Yes.
11  Q    Did Serhat Gumrukcu have any role in seeking
12       Robert Wolfe's termination?
13  A    No.
14  Q    What was the reason why the Board decided to
15       terminate Robert Wolfe?
16  A    There was a few very simple reasons.  We grew
17       and moved forward and the company was bigger --
18       becoming bigger.  And we needed an in-house,
19       full-time CFO close to Miami where our SEC
20       lawyer is and where our independent director of
21       our Compensation Committee was located so that
22       was convenient to move forward and move up with
23       the company's progress to an in-house CFO and
24       not a consultant.
25  Q    Was there any concerns about Robert Wolfe's job
```

```
 1        and the relationship we had.
 2   Q    Did you have communication with Robert Wolfe
 3        after January 10, 2019?
 4             MR. VALENTE:
 5                  Objection.  Form.
 6   A    I don't recall.
 7   Q    What happened with the severance negotiations
 8        after January 10, 2019?
 9             MR. VALENTE:
10                  Objection.  Form.
11   A    So as far as I remember, the conversation
12        stopped because Robert Wolfe was not interested
13        in reaching a settlement where he would
14        participate in a transition.  So we couldn't
15        agree.  And there was a time where my CEO and
16        Board Member, Henrik Gronfeldt-Sorensen,
17        received a phone call from Ian Seyer Olsen, who
18        was a friend and a business associate with
19        Robert Wolfe, who threatened Henrik to reveal
20        public information if we didn't settle with Bob
21        and pay all the money to his account.  So that
22        was another concern.  We didn't know about it.
23        We had people, I asked Ole Abildgaard, who was
24        an investor, I said do you know this person who
25        was coincidentally at the offices in Denmark.  I
```

```
 1  A    What was my reaction?  You know, I had a
 2       reaction like any other Board Member of
 3       Enochian.  This is not personal, this is
 4       strictly business.  And from a business
 5       perspective I think that was, you know, his
 6       choice.  So what can I say?
 7  Q    Was anybody on the Board upset with Robert Wolfe
 8       for filing the lawsuit in Denmark?
 9            MR. VALENTE:
10                Objection.  Form.
11  A    No -- I don't think anybody has feelings here.
12       So this is purely business and if anybody was
13       upset, I don't think so.  We had to relate
14       what's right and wrong.  And the lawsuit was
15       filed as an employee at the civil court, and it
16       should have been Arbitration.  And there was
17       another mistake Robert Wolfe did.
18  Q    What was the Board's concern after they learned
19       about Robert Wolfe's file in Denmark?
20  A    What their concerns were?  I mean, if you know
21       of any concerns, I don't.  I cannot tell you if
22       there was any concerns.
23  Q    At a certain point a decision was made to file
24       the Vermont litigation against Robert Wolfe.
25  A    Yes.
```

```
 1        up a new exhibit.  Mr. Sindlev can you see
 2        what's been marked as Exhibit #7 on your screen
 3        now?
 4   A    Yes.
 5   Q    From this cover it appears to be a report from
 6        Waever Group entitled Due Diligence Report dated
 7        June 15, 2019.  Do you recall ever seeing this
 8        document?
 9   A    I don't know what's inside.  I think it's a
10        stand-up cover, so --
11   Q    I'll scroll down so you can see more of it.
12        Does that help refresh your memory at all?
13   A    Yes.  Let's scroll down a bit.
14   Q    Can you see that okay?
15   A    Yes.
16   Q    So from what's listed in this document, it's an
17        investigation of Robert E. Wolfe.
18             MR. VALENTE:
19                  Objection.  Form.
20   A    Yes.
21   Q    Does that refresh your memory at all?
22   A    I know of the document, yes.
23   Q    Have you seen this document before?
24   A    I've seen the document, yes.  But I think, as I
25        initially said, I've never read it.
```

```
 1   Q    So you've never read this at all?
 2   A    No.
 3   Q    Is there a reason why you didn't read it?
 4   A    It was none of my concern.  I was told about the
 5        content and it was really none of my business
 6        whoever Robert Wolfe was doing business or
 7        conducting business with.  You know, we had a
 8        process and we just needed to end it, end that
 9        relationship and move on.
10   Q    Who did you receive this document from?
11   A    Ole Abildgaard.
12   Q    Did he give you a paper copy or send it to you
13        electronically?
14   A    Probably electronically.
15   Q    Did you share it with any Board Members?
16   A    I think I forwarded it to our SEC lawyer,
17        Clayton Parker.
18   Q    Did you send it or distribute to anyone except
19        the lawyer?
20   A    I don't think so.
21   Q    Do you know if Ole Abildgaard distributed to any
22        other people?
23   A    No.  I don't know.
24   Q    Thank you for clarifying that.  That was a poor
25        question.  Did you consider bringing this
```

```
 1            MR. VALENTE:
 2                Objection.  Form.
 3   A   So that was, of course, our concern.  But that
 4       process was already started.  But we had an
 5       interest in who was Ian Sayer Olsen who was
 6       threatening us to pay an amount up front to his
 7       escrow account and letting us know if we didn't,
 8       Robert Wolfe would consider to not stick to his
 9       Confidentiality Agreement.  That was of a
10       concern.
11   Q   You talked before about the Danish press
12       manipulating information they received.
13   A   Yes.
14   Q   There wasn't a concern that the press could
15       manipulate a report like this to damage
16       Enochian's reputation?
17            MR. VALENTE:
18                Objection.  Form.
19   A   What has that report to do with Enochian?
20   Q   I guess if you never read it --  I guess I'm
21       having trouble following why you wouldn't read
22       this report while you're actively litigating a
23       case against Robert Wolfe?
24   A   But I mean you can guess as much as you want.
25       Why should I read it?  We are already in the
```



CONFIDENTIAL

```
 1              VIDEOGRAPHER:
 2                  We're back on the record.  Time is
 3          11:11 a.m.
 4  CONTINUED EXAMINATION BY MR. MCCABE:
 5  Q   Mr. Sindlev, I'm not trying to re-ask a question
 6      that was already answered, I just want to
 7      clarify.  I apologize.  I'm not trying to
 8      mischaracterize what you said earlier.
 9              MR. VALENTE:
10                  No, no, no.  Hang on.  Two things.
11          Dan, you're not on video.  I apologize
12          there.  And go ahead.
13              MR. MCCABE:
14                  Am I on video now?
15              MR. VALENTE:
16                  Yes.
17              MR. MCCABE:
18                  Audio?  Everything's working okay?
19              MR. VALENTE:
20                  Yes.
21  Q   Mr. Sindlev, I'm not trying to ask you a
22      question you've already answered, I just want to
23      clarify one point before I conclude.  Did I
24      understand your testimony earlier correctly
25      that, from your perspective, Bob Wolfe did not
```



CONFIDENTIAL

*Robert Wolfe and Crossfield, Inc. v. Enochian BioSciences, Inc. et al.*,
Civil Action No. 2:21-cv-00053-cr (D. Vt.)

**WITNESS:**  René Sindlev
**DATE OF DEPOSITION:**  July 8, 2022

### DEPOSITION ERRATA SHEET

| Page No.: | Line No.: | Change or Correction and Reason: |
|---|---|---|
| 12 | 12 | Change "wsa" to "was" (Correction) |
| 17 | 7-8 | Change "No.  Helping, helping.  Like Leire, the CEO, was helping and supporting in the context I had." to "Not directly, but Eric Leire, the CEO, was helping and supporting with the science." (Clarification) |
| 17 | 19 | Change "the science we got into the company" to "to be used for the company's operating capital." (Clarification) |
| 18 | 15 | Change "commercializing" to "commercialization" (Clarification) |
| 19 | 13 | Change "from" to "as I understood from" (Clarification) |
| 31 | 25 | Change "border" to "bought" (Clarification) |
| 33 | 1 | Change "civil" to "civilian" (Correction) |
| 33 | 2 | Change "notify" to "notice" (Correction) |
| 34 | 18 | Change "did" to "raised" (Correction) |
| 45 | 10 | Change "premier" to "high-level" (Clarification) |
| 45 | 11 | Change "Matt Tigle" to "Mark Dybul" (Correction) |
| 57 | 20 | Change "public information" to "nonpublic information" (Correction) |
| 58 | 7 | Change "-- one" to "-- through one" (Correction) |
| 58 | 9 | Change "public information" to "nonpublic information" (Correction) |
| 59 | 14-15 | Change "public information" to "nonpublic information" (Correction) |
| 60 | 8 | Change "public information" to "nonpublic information" (Correction) |
| 60 | 14 | Change "not according to the contract" to "not acting in accordance with the contract" (Clarification) |
| 73 | 10 | Change "stand-up" to "standard" (Correction) |
| 76 | 6 | Change "informing" to "reporting" (Clarification) |
| 85 | 6 | Change "public information" to "nonpublic information" (Correction) |
| 91 | 11-12 | Change "who can process commercialized" to "who can proceed with commercialization and" (Clarification) |

SIGNATURE: _DocuSigned by_ /s/ RENE SINDLEV          DATE: 8/9/2022