# EXHIBIT 26



REDACTED

STATE OF VERMONT　　　　　　　　　　CIVIL DIVISION
ORANGE UNIT　　　　　　　　　　　　　DOCKET NO. 24-2-19 Oecv

| | |
|---|---|
| Enochian Biosciences Denmark ApS and Enochian Biosciences, Inc., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| Crossfield, Inc. and Robert E. Wolfe, | ) ) |
| Defendants. | ) ) ) |

### PLAINTIFFS' MOTION FOR EMERGENCY *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiffs, Enochian BioSciences Denmark ApS ("Enochian") and Enochian Biosciences, Inc. ("Enochian Biosciences") (collectively, the "Plaintiffs"), move pursuant to Rule 65(a) of the Vermont Rules of Civil Procedure for entry of a temporary restraining order without notice and preliminary injunction enjoining defendants Robert E. Wolfe ("Wolfe") and his company, Crossfield, Inc., ("Crossfield") (collectively, the "Defendants"), which until January 9, 2019 performed Chief Financial Officer ("CFO") services as a consultant and CFO to Plaintiffs, from disclosing Plaintiffs' confidential information. In support of this Motion, Plaintiffs states the following.

### FACTUAL BACKGROUND

As set forth in the Verified Complaint, filed contemporaneously herewith and incorporated herein by reference, Plaintiffs are a biopharmaceutical company dedicated to identifying, developing, manufacturing, and commercializing gene-modified cell therapy. Verified Complaint for Injunctive Relief at ¶ 8 (hereinafter "Verified Complaint" or "Compl."). Plaintiff Enochian is the wholly owned subsidiary of plaintiff Enochian Biosciences. Compl. at ¶ 9. Enochian Bioscience is a public company trading on NASDAQ. Id. The success of Plaintiffs' business

FILED
VERMONT SUPERIOR COURT

FEB 12 2019

ENOCHIAN 000065

operation is dependent on, among other things, protection of its confidential information. Compl. at ¶ 10.

Plaintiff Enochian entered into a CFO Service Agreement with Defendants on or around July 11, 2017 (the "Agreement"). See Compl. at ¶ 11 and Ex. A. Pursuant to the Agreement, Defendants agreed to act as a consultant and the Chief Financial Officer for both Enochian and Enochian Biosciences. Compl. at ¶ 13 and Ex. A at A, § 1.1. The Agreement was amended on December 29, 2017 (the "Amendment"). Compl. at ¶ 12 and Ex. B. The Amendment did not have any effect on the issues raised in this lawsuit other than the fact that the Amendment was executed by Enochian Biosciences.[1]

The Agreement set forth Defendants' job responsibilities, which included "[d]evelop[ing] and maintain[ing] systems of internal controls to safeguard financial assets of the organization" and oversee coordination of activities with the outside auditors. Compl. at ¶ 14 and Ex. A at § 1.2. Because Defendants' job duties required Defendants to receive and use highly confidential information belonging to Plaintiffs, the Agreement contained a section dedicated to the protection of this confidential information. Compl. at ¶¶ 16-19 and Ex. A at § 9. In this section, Defendants acknowledged receipt of confidential information and agreed not to disclose such information. Defendants acknowledged a duty of "strict confidentiality." Compl. at ¶ 17 and Ex. §9.1. During the term of this Agreement, Defendants did, in fact, receive and possess highly confidential information. Compl. at ¶ 22. This highly confidential information included, but was not limited to, certain financial and intellectual property information. Id.

---

[1]    As explained in the Verified Complaint, the Agreement was signed by DanDrit BioTech A/S, which is now Enochian. The Amendment was signed by DanDrit BioTech USA, Inc., which is now Enochian Biosciences.

FILED
VERMONT SUPERIOR COURT

FEB 12 2019

ORANGE UNIT
ENOCHIAN_000066

2

On or about January 9, 2019, Plaintiffs terminated Defendants' services. Compl. at ¶ 23. A dispute arose between the parties with respect to monies owed to Defendants upon termination (the "Dispute"). Compl. at ¶ 24. Plaintiffs then sought to negotiate a mutually acceptable resolution to the Dispute. Compl. at ¶ 25.

Instead of negotiating with Plaintiffs in good faith, Defendants sought money far beyond what was contractually owed. Compl. at ¶ 26. Knowing that it had no contractual right to these monies, Defendants began engaging in a series of wrongful conduct designed to harm Plaintiffs and to extract undue payments from Plaintiffs. Id. In other words, Defendants have been using wrongful tactics to harm Plaintiffs with the idea that this harm will cause Plaintiffs to pay them the monies they claim, not on the merits, but to stop the wrongful conduct. Compl. at ¶ 27. This wrongful conduct has included at least the following:

The Agreement contains an arbitration clause calling for a confidential arbitration in Denmark. Compl. at ¶ 20 and Ex. A at § 13.2. ██████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████

█████████████████████████████████████

███████████████████████████████████████ ██

███████████████████████████████████████

2 ██████████████████████████████████████

FILED
VERMONT SUPERIOR COURT

FEB 12 2019

ORANGE UNIT
ENOCHIAN_000067

3



Defendants' conduct shows that they have no intention of maintaining their duty not to disclose Plaintiffs' confidential information, and that they are, in fact, wrongfully disclosing confidential information as a negotiations tactic and as part of their effort to extract undue monies from Plaintiffs.

As a consequence of the foregoing conduct by Defendants, and because it will take time for the arbitration to take place, especially because Plaintiffs have commenced their action in a Danish court, Plaintiffs have suffered and will continue to suffer irreparable harm and loss unless an injunction is granted.

## LEGAL ARGUMENT

**I.    PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER**

**A.    STANDARD FOR INJUNCTIVE RELIEF.**

A plaintiff may obtain a temporary restraining order or preliminary injunction where it can show the following four elements: "(1) the threat of irreparable harm to the movant; (2) the potential harm to the other parties; (3) the likelihood of success on the merits; and (4) the public

FILED
VERMONT SUPERIOR COURT

FEB 1 2 2019

4

ORANGE UNIT
ENOCHIAN_000068

interest." In re J.G., 160 Vt. 250, 255 n.2, 627 A.2d 362, 365 n.2 (1993). The purpose of a preliminary injunction is to prevent irreparable harm by maintaining the status quo until a final hearing can occur. See Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is ... to preserve the relative positions of the parties until a trial on the merits can be held."); Diversified Mortg. Inv'rs v. U.S. Life Ins. Co. of New York, 544 F.2d 571, 576 (2d Cir. 1976) ("The purpose of a preliminary injunction is to maintain the status quo pending a final determination on the merits."). A preliminary injunction maintaining the status quo is proper when the parties have agreed to arbitrate their dispute as "[a]rbitration can become a 'hollow formality' if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute." Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1053 (2d Cir. 1990) (citations omitted). Indeed, the Second Circuit has given "explicit and broad recognition to a district court's power to grant preliminary injunctive relief pending arbitration[.]" Id. at 1052.

Here, as shown below, Plaintiffs have established each of the elements for injunctive relief. Accordingly, the Court should grant the modest injunctive relief sought by Plaintiffs to preserve the status quo and prevent Defendants from further disclosure of Plaintiffs' confidential information.

**B.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF.**

Harm is "irreparable" when "'the threatened harm would impair the court's ability to grant an effective remedy.'" 110 East Spring Street CU, No. 11-2-16 VTEC, 2016 WL 2839327, at *5 (Vt. Super. Ct., Env. Div. Apr. 22, 2016) (quoting 11A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2948). It is well-established that the disclosure of confidential information causes irreparable harm. See, e.g., Nat'l Elevator Cab & Door Corp. v. H&B, Inc., 282 F. App'x 885, 887 (2d Cir. 2008) (affirming magistrate judge's finding that the plaintiff would

5

FILED
VERMONT SUPERIOR COURT

FEB 12 2019

ENOCHIAN_006069
ORANGE UNIT

likely suffer irreparable harm if a competitor was not preliminarily enjoined from accessing the plaintiff's confidential information).

In this case, there can be no question that Plaintiffs will suffer irreparable harm absent the requested injunction. By virtue of their positions as CFO, Defendants are in possession of Plaintiffs' confidential information, and their conduct shows that they are willing to disclose it to cause harm and for leverage in their negotiations. Compl. at ¶¶ 27, 30. The negotiations are tense and an arbitrunal is not yet in place to hear the Dispute. Compl. at ¶ 31. Without an injunction, Defendants will continue to disclose or threaten to disclose Plaintiffs' confidential information as part of their negotiations tactics. Id. Once Plaintiffs' confidential information has been disclosed, there will be no adequate remedy at law that would make Plaintiffs whole because damages will be inherently difficult to calculate. See Walker St. Assocs., Ltd. v. NGC Energy Res., Ltd. P'ship, No. 94 CIV. 0025 (PKL), 1994 WL 481685, at *5 (S.D.N.Y. May 27, 1994) ("Damages from [the …] improper use of confidential information may be difficult to calculate, thus making money damages an inadequate remedy.")

Accordingly, there is no question that Plaintiffs will be irreparably harmed absent the injunctive relief sought here.

## C.   DEFENDANTS WILL SUFFER NO POTENTIAL HARM IN COMPLYING WITH THE AGREEMENT.

Defendants, a well-established businessman and his corporation,[3] formally agreed to provide services in accordance with the terms of the Agreement. They knew and understood that they had a duty not to disclose Plaintiffs' confidential information. An order requiring Defendants

---

[3]   At the time Defendants entered into the Agreement, Wolfe was an officer, director, and/or owner of, or otherwise involved in, no less than 28 different entities. Compl. at ¶ 5 and Ex. A at App'x A.

FILED
VERMONT SUPERIOR COURT

FEB 1 2 2019

ORANGE UNIT
ENOCHIAN_000070

6

to abide by their contractual (and common law) duty not to disclose confidential information will not cause them any harm.

**D.    PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.**

Plaintiffs will likely prevail on their claims against Defendants. As shown by the Verified Complaint, Defendants have already disclosed Plaintiffs' confidential information in violation of their contractual and common law duties. There is no defense or justification for Defendants' improper conduct. The disclosed confidential information was not relevant to the Danish Complaint and Defendants, who were no longer performing consulting services for Plaintiffs, had no obligation or duty to disclose the Danish Complaint to Enochian Biosciences' outside auditors. To the contrary, Defendants were contractually prohibited from doing so.

**E.    INJUNCTIVE RELIEF WILL FURTHER THE PUBLIC INTEREST.**

Finally, the public interest will be served by granting the requested injunctive relief. As indicated above, there is a strong public policy interest in preventing former officers of a corporation from wrongfully disclosing confidential information, particularly where such disclosure is being used as tactics to obtain leverage in settlement negotiations. This public policy interest has been expressly recognized in numerous jurisdictions. See, e.g., OmniGen Research v. Yongqiang Wang, No. 6:16-CV-00268-MC, 2017 WL 2729266, at *4 (D. Or. Jan. 10, 2017) ("Courts have recognized that the disclosure or threatened disclosure of trade secrets or even non-trade secret confidential information are sufficient to meet the irreparable injury requirement for a preliminary injunction ... . It is in the public interest to protect confidential information and intellectual property rights.") (internal quotation marks and citation omitted); Agel Enterprises, LLC v. Schroeder, No. 2:08-CV-673 TS, 2008 WL 4753727, at *2 (D. Utah Oct. 28, 2008) ("The Court finds that a preliminary injunction will not adversely affect the public interest, because the Court believes that protecting confidential information of the sort in question here is in the public

VERMONT SUPERIOR COURT

FEB 12 2019

ENOCHIRAN 000971
ORANGE UNIT

7

interest."). As a result, the requested injunction here will clearly serve this salutary goal and prevent Defendants from benefiting from breaching their contractual and common law obligations to Plaintiffs.

## II.    NOTICE SHOULD NOT BE REQUIRED BEFORE THE COURT TEMPORARILY RESTRAINS DEFENDANTS

Vermont Rule of Civil Procedure 65(a) provides that a temporary restraining order may be issued without written or oral notice upon the adverse party where, *inter alia*, "it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." Vt. R. Civ. P. 65(a). Here, as shown above, there is a real risk that providing notice to Defendants would exacerbate the irreparable harm that they have already caused Plaintiffs by encouraging Defendants to release more confidential information before a preliminary injunction is in place. There is simply no basis for Defendants, which are no longer acting as a consultant or CFO to Plaintiffs, to disclose Plaintiffs' confidential information. Under these circumstances, providing notice to Defendants could frustrate the very purpose of the limited restraints that Plaintiffs seeks here.

## III.   THE COURT SHOULD WAIVE SECURITY, ALTHOUGH PLAINTIFFS ARE PREPARED TO PROVIDE A BOND TO SECURE THE TEMPORARY RESTRAINING ORDER, IF NECESSARY

Providing security as a requisite for injunctive relief here serves no purpose, and as such, the Court should waive the requirement. Under Rule 65(c), "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant." The Court, however, has broad discretion to waive the giving of security "for good cause shown." Id. Here, good cause exists because there is no likelihood of incidental or consequential harm to Defendants. See Int'l Controls Corp. v. Wesco, 490 F.2d 1334, 1356 (2d Cir. 1974) (noting that court has discretion to

VERMONT SUPERIOR COURT

FEB 1 2 2019

ORANGE UNIT
ENOCHIAN_000072

8

waive security if no proof of likelihood of harm to enjoined party). Defendants will suffer no harm by an order maintaining the *status quo*—under terms previously agreed to by Defendants—until this matter is resolved. Accordingly, the Court should waive the giving of security.

Plaintiffs are nonetheless prepared to secure the temporary restraining order with a bond, if ordered by this Court. It is respectfully submitted, however, that Plaintiffs should not be required to post anything more than a minimal bond (i.e. less than $1,000.00) in this case because Defendants will suffer no harm from the restraints that Plaintiffs seek here.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (i) grant their motion for a temporary restraining order without notice, (ii) schedule a hearing for this Motion with respect to Plaintiffs' request for a preliminary injunction, and (iii) grant Plaintiffs' request for a preliminary injunction.

FILED
VERMONT SUPERIOR COURT

FEB 1 2 2019

ORANGE UNIT

9

ENOCHIAN_000073

ENOCHIAN BIOSCIENCES DENMARK APS
AND ENOCHIAN BIOSCIENCES, INC.,

By its counsel,

Christopher J. Valente
K&L Gates LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
T. 617.261.3100
F. 617.261.3175
christopher.valente@klgates.com

&

David M. Pocius
Paul Frank + Collins P.C.
One Church Street
P.O. Box 1307
Burlington, VT 05402-1307
T. 802.658.2311
F. 802.658.0042
dpocius@pfclaw.com

Dated: February 11, 2019

FILED
VERMONT SUPERIOR COURT

FEB 12 2019

10

ORANGE UNIT
ENOCHIAN_000074